**TRUST COMPANY BANK,**
Plaintiff–Appellant,

v.

**UNITED STATES GYPSUM COMPANY,**
Defendant–Appellee.

No. 91–1255.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1992.

Rehearing Denied Feb. 24, 1992.

---

Owen T. Palmer, Jr., Gulf Port, Miss. and Daniel A. Speights, Speights & Runyan, Hampton, S.C., for plaintiff-appellant.

Roy C. Williams, Bryant, Colingo, Williams & Clark, Pascagoula, Miss. and Tom Kenworthy, Morgan, Lewis & Bocki-

**1146**

us, Philadelphia, Pa., for defendant-appellee.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

JOHNSON, Circuit Judge:

In this action filed in Mississippi state court and removed to the United States District Court for the Southern District of Mississippi, plaintiff Trust Company Bank complains that it has suffered damages from the presence of asbestos in a twenty-two year old building it owns in Georgia. The federal district court declined to grant relief, concluding that it lacked subject matter jurisdiction and, in the alternative, that the Mississippi statute of repose barred the plaintiff's action. On appeal, while we disagree that the district court lacked jurisdiction, we are persuaded that the Mississippi statute of repose precludes a judgment in the plaintiff's favor. Accordingly, this Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Many years ago, when Hank Aaron was the hero of every teenage boy in Georgia and James Earl Carter, Jr. was still a farmer in Plains, the Trust Company Bank ("Trust") secured a contractor to erect a building in downtown Atlanta. In the construction of the building, the contractor used several fireproofing materials that contained asbestos, a carcinogen which after a long latency period can attack and then incapacitate the lungs and other vital body organs. The contractor finished construction of the Trust building in 1969.

The presence of asbestos in its building eventually forced Trust to institute an expensive abatement program. On June 30, 1989, to recover some of the expense of this abatement program, Trust filed a lawsuit in Mississippi state court against United States Gypsum Company ("USG"), the company which designed and manufactured the fireproofing materials that contained asbestos. Trust alleged that USG manufactured defective and unreasonably dangerous products with the knowledge that these products can release toxic asbestos fibers. USG removed the action to federal district court.

Five days after removal of the case to federal court, USG filed a motion for dismissal, contending that the court lacked subject matter jurisdiction because the case was a "local action" which should have been pursued in Georgia. The district court denied this motion. Undaunted, USG filed a motion for summary judgment, this time arguing that the Mississippi statute of repose barred the plaintiff's action. On September 27, 1990, the district court *sua sponte* reconsidered USG's motion for dismissal and, reversing its earlier decision, dismissed the plaintiff's action under Federal Rule of Civil Procedure 12(b)(1). In addition, and in the alternative, the district court granted USG's motion for summary judgment.

On October 9, 1990, Trust filed a "Motion to Reconsider" the district court's judgment against it. The district court denied this motion on February 1, 1991, and within thirty days thereafter, Trust filed its notice of appeal.

## II. DISCUSSION

Trust raises two arguments: (1) that the district court erred in refusing to exercise subject matter jurisdiction over this case and (2) that the district court erred in concluding that the Mississippi statute of repose bars the plaintiff's action. Before turning to these arguments, however, we must consider whether this Court has acquired the requisite appellate jurisdiction over this case.

### A. Appellate Jurisdiction

#### 1. *Timeliness of the Notice of Appeal*

USG contends that Trust did not file a timely notice of appeal and, therefore, that this Court may not exercise its appellate jurisdiction. As a general rule, if a party desires to appeal an adverse judg-

ment, then it must file a notice of appeal within thirty days after entry of the judgment. Fed.R.App.P. 4(a)(1).[1] But if the party files a proper motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure, then the party must file its notice of appeal within thirty days after entry of the district court order that grants or denies its Rule 59(e) motion. Fed.R.App.P. 4(a)(4).[2]

Plaintiff Trust filed its notice of appeal on March 4, 1991, within thirty days after entry of the district court order denying its "Motion to Reconsider."[3] As long as this "Motion to Reconsider" constitutes a Rule 59(e) motion, then Trust has beaten the deadline for filing its notice of appeal. This Court has ruled that a motion which challenges a prior judgment on its merits will be treated as a Rule 59(e) motion if it is served within ten days after entry of the judgment. *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991). The plaintiff's "Motion to Reconsider," which unquestionably challenged the merits of the district court's judgment, was filed and served eight days after the district court entered its final judgment.[4] Accordingly, Trust's

notice of appeal timely triggered the appellate jurisdiction of this Court.

**2. *Effectiveness of the Notice of Appeal***

USG further contends that, even if Trust filed a timely notice of appeal, Trust did not effectively appeal the order dismissing its action and granting summary judgment to the defendant. Rule 3(c) of the Federal Rules of Appellate Procedure provides that "[t]he notice of appeal ... shall designate the judgment, order or part thereof appealed from." Fed.R.App.P. 3(c). In its notice of appeal, Trust stated that it "hereby appeals ... *from the Order refusing to alter or amend* the September 27, 1990, Order dismissing the Plaintiff's action," Record at 264 (emphasis added), but did not state that it intended to appeal the district court order dismissing its action and granting summary judgment in favor of the defendant. If Trust intended to appeal the order dismissing its action and granting summary judgment, then it has not "designate[d] the judgment" from which it appeals.[5]

But while Trust has breached the formal requirements of Rule 3(c), this error does

1. Although not relevant here, an exception to this general rule exists when the United States or one of its officers or agencies is a party to the action, in which case the notice of appeal must be filed within sixty days after the entry of the judgment. Fed.R.App.P. 4(a)(1).

2. A notice of appeal that a party files prior to the disposition of a Rule 59(e) motion has no effect. *Id. See Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 925 F.2d 812, 815–16 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991); *Midland West Corp. v. FDIC*, 911 F.2d 1141, 1144 (5th Cir.1990).

3. The district court denied the plaintiff's "Motion to Reconsider" on February 1, 1991. The thirtieth day after the denial of this motion would have been March 3, 1991. However, March 3 was a Sunday. Under Rule 6(a) of the Federal Rules of Civil Procedure, if the last day of a filing period falls on a Sunday, then the filing period continues to run until the end of Monday. Fed.R.Civ.P. 6(a). Trust filed its notice of appeal on March 4, 1991, the final day of the filing period.

4. When a period of time prescribed under the rules of civil procedure is less than eleven days,

"intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). In this case, the district court entered its final judgment on September 27, 1990, and Trust filed and served its "Motion to Reconsider" on October 9, 1990. Excluding the four days in two intermediate weekends, Trust served its "Motion to Reconsider" eight days after the district court entered its final judgment.

5. Unlike a dismissal under Rule 12(b)(1) or a summary judgment under Rule 56(c)—both of which are reviewed de novo—the denial of a Rule 59(e) motion to alter or amend a judgment is reviewed under the abuse of discretion standard. *See Midland West Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir.1990); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174–75 (5th Cir.1990). If this Court, interpreting Trust's notice of appeal literally, were to confine its review to the propriety of the district court's denial of Trust's motion to alter or amend the judgment, then the effect on the plaintiff's appeal might be significant. As a function of the abuse of discretion standard, this Court would have to review the ruling with deference to the district court's superior ability to marshal the facts and determine whether its judgment should be changed.

not defeat its right to appeal the entire case. Interpreting notices of appeal liberally, this Court often has exercised its appellate jurisdiction—despite an improper designation under Rule 3(c)—where it is clear that the appealing party intended to appeal the entire case. *See Osterberger v. Relocation Realty Service Corp.*, 921 F.2d 72, 73 (5th Cir.1991); *Cates v. International Telephone & Telegraph Corp.*, 756 F.2d 1161, 1173 n. 18 (5th Cir.1985); *Atlantic Coast Line R. Co. v. Mims*, 199 F.2d 582, 583 (5th Cir.1952); *cf. Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").[6] Without question, Trust intended to appeal the entire case: while its notice of appeal did not specifically state that the plaintiff appealed the entire case, the notice of appeal specifically challenged the dismissal of Trust's action and the summary judgment in favor of the defendant. *See* Record at 264. We conclude that Trust's notice of appeal is effective and permits this Court to exercise its full appellate jurisdiction.

## B.  Subject Matter Jurisdiction

■ The district court dismissed this case because it concluded that the case was a "local action" which Trust should have brought in Georgia rather than Mississippi. Under the local action doctrine, a local action involving real property, as opposed to a transitory action, must be brought within the territorial boundaries of the state in which the land is located. *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir.1987). The instant case, which Trust initiated in Mississippi state court, involves alleged property damages to a building in Georgia. If this case is indeed a local action, then the district court properly dismissed it.

The common law distinction between local actions and transitory actions finds its American roots in *Livingston v. Jefferson*, 15 F.Cas. 660 (C.C.D.Va.1811) (No. 8411). In *Livingston*, a Louisiana landowner sued former president Thomas Jefferson in a federal court in Virginia for an alleged trespass to his land. The venerable Chief Justice John Marshall, sitting as a circuit judge, dismissed the action. Emphasizing that "actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere ... but are local where their cause is in its nature necessarily local," Justice Marshall determined that an action for trespass to land in Louisiana was local and could not be heard in a Virginia court. *Id.* at 664.

Since *Livingston*, the common law local action doctrine has become ingrained in American jurisprudence. State and federal courts alike have recognized and applied the rule. *See, e.g., Louisville & N.R.R. v. Western Union Telegraph Co.*, 234 U.S. 369, 34 S.Ct. 810, 58 L.Ed. 1356 (1914); *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107, 15 S.Ct. 771, 771, 39 L.Ed. 913 (1895); *Hayes*, 821 F.2d at 287; *Humble Oil & Refining Co. v. Copeland*, 398 F.2d 364, 367 & n. 5 (4th Cir.1968); *Miller v. Miller*, 715 S.W.2d 786, 788 (Tex.App.— Austin 1986, writ ref'd n.r.e.); *Laslie v. Gragg Lumber Co.*, 184 Ga. 794, 193 S.E. 763, 765 (1937). Only a handful of jurisdictions have rejected the local action doctrine. *See, e.g., Reasor–Hill Corp. v. Harrison*, 220 Ark. 521, 249 S.W.2d 994, 995–96

---

6. Interestingly, in *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049 (5th Cir.), *cert. denied*, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981), this Court refused to exercise its appellate jurisdiction to review a ruling on a "motion to disallow costs" that the appellant had not designated in its notice of appeal. Although recognizing that a policy of liberal construction governs the interpretation of notices of appeal, the Court commented that it had "no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal." *Id.* at 1056.

The opinion in *C.A. May Marine Supply* is not inconsistent with the conclusion we reach in the instant case. In *C.A. May* the Court noted that the intent to appeal the "motion to disallow costs" was not apparent and, therefore, "prejudice to the adverse party is likely to result if review is granted." *Id.* Conversely, in this case, it is clear that Trust intended to appeal the underlying summary judgment and dismissal. Moreover, the exercise of appellate jurisdiction over this case will not prejudice defendant USG: the defendant has briefed all of the issues in this appeal and was able to discuss these issues in oral argument.

(1952); *Holmes v. Barclay,* 4 La.Ann. 63 (1849); *St. Louis Smelting & Refining Co. v. Hoban,* 357 Mo. 436, 209 S.W.2d 119, 123–24 (1948). Significantly, however, Mississippi is one of the jurisdictions which has rejected the common law local action doctrine. *See Archibald v. Mississippi & T.R. Co.,* 66 Miss. 424, 6 So. 238, 238–39 (1889) ("The common law distinction between local and transitory actions does not exist here.").

■ Trust argues that Mississippi law should determine whether the local action doctrine applies in this case. If this Court treated the local action doctrine in the same manner it treats other matters of jurisdiction and venue, then this argument would be incorrect.[7] Federal law, not state law, usually controls the outcome of subject matter jurisdiction and venue disputes in federal court. *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3822, at 207 & n. 22 (1986).[8] This Court, however, has maintained a questionable distinction between the local action doctrine and other matters of federal jurisdiction and venue. In *Chateau Lafayette Apart-*

*ments, Inc. v. Meadow Brook National Bank,* 416 F.2d 301 (5th Cir.1969), the Court reasoned that "the law of the forum state"—not federal law—determines whether the local action doctrine applies. *Id.* at 304 n. 7. With some misgivings, the Court reaffirmed this reasoning in its more recent opinion in *Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 287 (5th Cir.1987).[9]

■ The use of state law to determine whether a federal court can resolve a local action is difficult to support. The local action doctrine is "intimately related to federal jurisdiction and venue," and should not be subject to different choice of law rules. Note, *Local Actions in the Federal Courts,* 70 Harv.L.Rev. 708, 711 (1957). Chief Justice Marshall himself recognized as much in *Livingston v. Jefferson,* commenting that federal law should govern the local action doctrine just as it governs other procedural matters. 15 F.Cas. at 665 (the applicability of the local action doctrine "depends, exclusively, on the constitution and laws of the United States."). Nonetheless, this Court has declared that the law of the forum state determines whether the local action doctrine is applicable,[10] and

---

**7.** It is unclear whether the local action doctrine runs to the jurisdiction or the venue of a court. *Compare Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 287 (5th Cir.1987) ("What is explicit or implicit in all of these decisions is that federal and state courts lack *jurisdiction* over the subject matter of claims to land located outside the state in which the court sits.") (emphasis added) *with Raphael J. Musicus, Inc. v. Safeway Stores, Inc.,* 743 F.2d 503, 506 (7th Cir.1984) ("Proper *venue* is determined by the characterization of the action as either local or transitory....."). The conclusion we reach in this case is the same regardless whether the local action doctrine runs to jurisdiction or venue.

**8.** Curiously, defendant USG does not argue that federal common law governs the applicability of the local action doctrine, but rather argues that Georgia case law governs this determination. USG suggests that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *requires* the application of Mississippi choice of law rules to determine the appropriate legal standard. Under Mississippi choice of law rules, according to USG, Mississippi courts would have looked to Georgia law, which recognizes the common law local action doctrine. *See Laslie v. Gragg Lumber Co.,* 184 Ga. 794, 193 S.E. 763 (1937).

The defendant's analysis is unpersuasive. Federal courts use the *Erie* doctrine to determine which *substantive* state laws control a lawsuit. The *Erie* doctrine does not help the federal courts determine which *procedural* laws control a lawsuit. *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.,* 743 F.2d 503, 506 n. 2 (7th Cir.1984). Because the local action doctrine is a procedural matter, the *Erie* doctrine is inapposite.

**9.** At least implicitly, the Court in *Hayes* acknowledged that the application of state procedural law in this situation was theoretically unsound. However, the Court refused to alter the rule it first announced in *Chateau Lafayette,* commenting that the result would be the same whether it applied state law or federal law. *Hayes,* 821 F.2d at 288. *Cf.* 15 Wright, Miller & Cooper § 3822, at 208–09 ("Fortunately the difference is not of great practical importance for in most instances state law has developed in accordance with the federal decisions.").

**10.** In deciding *Chateau Lafayette Apartments* and *Hayes,* this Court apparently relied upon erroneous dicta in *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), in which the Supreme Court, purporting to follow *Living-*

the doctrine of stare decisis compels us to follow this conclusion in the instant appeal. *See In re Dyke*, 943 F.2d 1435, 1442 (5th Cir.1991) ("In this circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court."); *see also Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991); *Brown v. United States*, 890 F.2d 1329, 1336 (5th Cir.1989). Thus, we must look to Mississippi law to determine whether the local action doctrine applies here.[11]

As we previously observed, Mississippi has rejected the common law local action doctrine. A Mississippi statute, Miss.Code Ann. § 11–11–3 (Supp.1990), alone determines whether a court can exercise jurisdiction over a "local" cause of action. *See Archibald*, 6 So. at 238–39. This statute recognizes only three categories of "local" actions: (1) actions of trespass on land; (2) ejectment proceedings; and (3) actions for the statutory penalty for cutting and boxing trees and firing woods. Miss.Code Ann. § 11–11–3. The instant action does not fall within any of these three categories. It therefore is not a local action under Mississippi law, and the courts in Mississippi, including the federal district court in Biloxi, properly could exercise jurisdiction over it.

On two occasions, the Mississippi Supreme Court has appeared to retreat from its position that section 11–11–3 alone determines whether a trial court can exercise jurisdiction over an action. In *Strickland v. Humble Oil & Refining Co.*, 194 Miss. 194, 11 So.2d 820 (1943), for example, the supreme court ruled that, as an equitable matter, a Mississippi trial judge could decline to settle a title dispute to land in another state. 11 So.2d at 823. In *Barnett v. National Surety Corp.*, 195 Miss.

528, 15 So.2d 775 (1943), the supreme court ruled that a Mississippi trial judge could refuse to exercise jurisdiction over an action against an Alabama sheriff on his surety bond because the action implicated the internal police regulations of another state. 15 So.2d at 776.

Neither *Strickland* nor *Barnett*, however, abrogates section 11–11–3 and its limitation on the categories of "local" actions. These two cases merely emphasize that compelling interests, such as the territorial limits inherent in an *in rem* title dispute or the internal police regulations of a foreign state, can in some cases permit—not require—a Mississippi court to forego exercise of its judicial power. *See Strickland*, 11 So.2d at 823 ("dismissal of the suit is within the sound judicial discretion of the court."). No such compelling interests exist in the instant case. The dispute between Trust and USG is a simple *in personam* products liability action. It does not involve intricate title questions or foreign police regulations which, by virtue of their intimate connection with another state, would compel the trial court to disavow its jurisdiction and send the case to a more qualified forum. *Cf. Shewbrooks v. A.C. & S., Inc.*, 529 So.2d 557 (Miss.1988) (trial court must exercise jurisdiction over asbestos litigation even though the cause of action arose and accrued in another state). According to Mississippi law, actions like the instant one are transitory, not local. The district court erred in holding that it had no jurisdiction over this case.

## C. Statute of Repose

Concluding that the Mississippi statute of repose barred Trust's claims, the district court granted summary judgment in favor

---

ston, declared that "whether an action for trespass to land in one state can be brought in another state *depends on the view which the latter state takes of the nature of the action."* *Id.* at 669–70, 13 S.Ct. at 228 (emphasis added).

**11.** The irony of this conclusion is not lost on the Court. While federal law, which recognizes the local action doctrine, would hold that the federal district court has no jurisdiction over this action, the law of Mississippi, which does not recognize the local action doctrine, insists that the federal district court does have jurisdiction over this action. The result of our procedural rule is that state law can confer jurisdiction on a federal court even when federal law would deny jurisdiction.

of the defendant.[12] Section 15–1–41 of the Mississippi Code provides:

> No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property ... against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

Miss.Code Ann. § 15–1–41 (Supp.1991). It is undisputed that Trust filed its suit against USG more than six years after Trust first occupied its building in Atlanta.

Trust contends that section 15–1–41 does not support a summary judgment in defendant USG's favor. The plaintiff offers three arguments: (1) section 15–1–41 does not protect manufacturers from products liability actions; (2) "asbestos-containing" building materials are not improvements to real property; and (3) section 15–1–41 is unconstitutional. Each of these arguments lacks merit.[13]

12. We express no opinion whether the Georgia statute of repose, rather than the Mississippi statute of repose, should have governed the parties' rights in this lawsuit. *See Allison v. ITE Imperial Corp.,* 928 F.2d 137, 144 (5th Cir.1991). There was no need for the district court to conduct a choice of law analysis. As the district court noted, the applicable Georgia statute of repose had expired. *See Corporation of Mercer University v. National Gypsum Co.,* 258 Ga. 365, 368 S.E.2d 732 (1988). If the Mississippi statute of repose also had expired, then summary judgment in favor of the defendant was appropriate, regardless whether Georgia or Mississippi law applied.

13. Trust also contends that, even if section 15–1–41 supports summary judgment, the statute only supports a partial summary judgment because section 15–1–41 does not apply to all of its claims. This contention that section 15–1–41 applies to some claims, but not others, is meritless. The express language of 15–1–41 states that "no action" may be brought more than six years after occupancy of the building which houses the defective product. Miss.Code Ann. § 15–1–41 (Supp.1991).

### 1. Protection of Manufacturers

[7] Citing a litany of cases applying the law of states other than Mississippi,[14] Plaintiff Trust complains that USG is not a protected actor under the Mississippi statute of repose. But while it is true that some states have denied repose protection to the manufacturers of defective building products, Mississippi is not one of those states. Section 15–1–41 is much broader than most statutes of repose. *See Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.,* 402 So.2d 320, 324 (Miss.1981) ("The class of persons covered by the statute is large...."). By its express language, section 15–1–41 extends repose protection to *"any* person ... furnishing the design, planning, supervision of construction or construction of [an] improvement to real property." Miss.Code Ann. § 15–1–41 (Supp.1991) (emphasis added). This language includes manufacturers who, like defendant USG, furnish the design for improvements to real property.[15]

### 2. Improvements to Real Property

■ Trust complains that the products USG manufactured—"asbestos-containing" fireproofing materials applied to the steel

14. *See, e.g., Luzadder v. Despatch Oven Co.,* 834 F.2d 355 (3d Cir.1987) (Pennsylvania law), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *Uricam Corp. v. W.R. Grace & Co.,* 739 F.Supp. 1493 (W.D.Okla.1990); *Hebron Public School Dist. v. United States Gypsum Co.,* 723 F.Supp. 416 (D.N.D.1989); *County of Johnson v. United States Gypsum Co.,* 580 F.Supp. 284 (E.D.Tenn.1984); *Cinnaminson Township Bd. of Educ. v. United States Gypsum Co.,* 552 F.Supp. 855 (D.N.J.1982); *Dighton v. Federal Pacific Electric Co.,* 399 Mass. 687, 506 N.E.2d 509 (1987), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); *Reeves v. Ille Electric Co.,* 170 Mont. 104, 551 P.2d 647 (1976).

15. While the Mississippi Supreme Court has never expressly addressed the question whether section 15–1–41 protects manufacturers, it has given the statute that effect. In *Smith v. Fluor Corp.,* 514 So.2d 1227 (Miss.1987), the supreme court, on the basis of section 15–1–41, affirmed a summary judgment in favor of a defendant manufacturer in a products liability action. *Id.* at 1230.

support structure and structural ceiling of the bank building—are not "improvements to real property" within the meaning of section 15–1–41. In *Collins v. Trinity Indus., Inc.*, 861 F.2d 1364 (5th Cir.1988), this Court, examining the phrase "an improvement to real property," stated: "the term improvement must be given its customary meaning. Common definitions of the term generally refer to a permanent addition that increases the value of the property and makes it more useful." *Id.* at 1365. *See also Smith v. Fluor Corp.*, 514 So.2d 1227, 1230 (Miss.1987). There is little doubt that the fireproofing materials in this case increased the value of the bank building and made it more useful. These fireproofing materials constitute an improvement to real property within the customary meaning of the term.

3. *Constitutionality of the Statute of Repose*

■ The plaintiff complains that section 15–1–41 of the Mississippi Code violates the equal protection clauses of the United States Constitution and the Mississippi Constitution. Trust did not raise this argument in the district court prior to final judgment.[16] It has therefore waived its equal protection complaint. *See Collins*, 861 F.2d at 1366.

## III. CONCLUSION

The district court erred in concluding that it had no subject matter jurisdiction over this case. The court did not err, however, in granting summary judgment in favor of defendant USG. The Mississippi statute of repose bars Trust's claims against the defendant. Since one of the district court's two reasons for dismissing this case is valid, this Court must affirm the judgment of the district court.

AFFIRMED.

---

**16.** Trust first raised its equal protection argument in the "Motion to Reconsider" it filed after the district court had granted summary judgment. As we noted earlier, this "Motion to Reconsider" constitutes a Rule 59(e) motion to alter or amend the final judgment. The Eighth Circuit has cautioned that a litigant "cannot ... use rule 59(e) to expand the judgment to encompass new issues." *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657, 660 (8th Cir.1987). Under this Eighth Circuit rule, Trust has failed to raise its equal protection argument in the district court because it presented this argument for the first time in its Rule 59(e) motion.

We harbor some misgivings whether the bright-line Eighth Circuit rule is fair. For instance, if a defendant files a motion for summary judgment, and the district court grants a complete summary judgment before the plaintiff has an opportunity to respond, then a Rule 59(e) motion might be the only available method by which the plaintiff can raise an issue before the district court. To conclude in such a situation that Rule 59(e) cannot expand the judgment to encompass a new issue might needlessly deprive the plaintiff of an appellate remedy. The instant case, however, is not such a situation. Plaintiff Trust had an opportunity to respond to USG's motion for summary judgment, and Trust failed to raise its equal protection argument in this response. Trust's attempt to use Rule 59(e) to correct this omission was untimely.